# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:10cv55

| | |
|---|---|
| KEVIN CASH, )<br>)<br>Plaintiff, )<br>) <br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 8] and the Defendant's Motion for Summary Judgment. [Doc. 12].

## I. PROCEDURAL HISTORY

The Plaintiff Kevin Cash filed an application for a period of disability and disability insurance benefits on August 8, 2006 alleging that he had become disabled as of November 1, 2005, due to polymyositis (an autoimmune disease), cardiomyopathy, dermatomyositis, sleep apnea, anxiety and panic attacks. [Transcript ("T.") 122]. The Plaintiff's application was denied initially and on reconsideration. [T. 49-52, 55-57]. Hearings were held before Administrative Law Judge ("ALJ") John L. McFadyen on March 17, 2009 and

June 2, 2009. [T. 27-46, 18-26]. On June 22, 2009, the ALJ issued a decision denying the Plaintiff benefits. [T. 9-15]. The Appeals Council accepted additional evidence, but denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-3]. The Plaintiff has exhausted his available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III.   THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation

3

4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's RFC, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

## IV. FACTS AS STATED IN THE RECORD

Plaintiff was 46 years old at the time of the ALJ hearing. He had completed the eighth grade and obtained a GED. [T. 31]. He last worked in November 2005 as a patrol officer with the Asheville Police Department. [T. 31].

Plaintiff had a childhood history of polymyositis, which was in remission throughout most of his adulthood, but apparently returned in 2005. On December 5, 2005, Plaintiff presented to Steven Mendelsohn, M.D., Ph.D., complaining of a rash in the upper and lower extremities, as well as weakness in the upper and lower extremities. He was diagnosed with polymyositis with episodic skin nodules. He was placed on Methotrexate and Prednisone for

4

this condition. [T. 209-23]. By February 13, 2006, his strength was good with no localizing weakness. [T. 227]. During this same period Plaintiff was also being treated for renal stones by Western Carolina Urological Associates. [T. 292-330].

At an examination in October 2007, Dr. Mendelsohn noted that Plaintiff's skin was normal, and that he had mild degenerative changes in his upper and lower extremities, large well toned muscles, no apparent weakness, and no localizing muscle pain. Lumbar spine x-rays on April 8, 2008 showed mild degenerative changes. [T. 584]. On May 8, 2008, it was noted that Plaintiff's pain was diffuse in nature. His muscle tone was still normal. [T. 507].

On December 30, 2008, Dr. Mendelsohn noted no inflammation, excellent range of motion, no atrophy, and no obvious vascular changes. [T. 506]. Lab reports from December 30, 2008 [T. 511] showed improvement over those of January 2008. [T. 514].

Plaintiff also has a history of cardiomyopathy. An echocardiogram performed in November 2005 revealed mildly diminished left ventricular systolic function at rest and a hypertensive response to stress. His ejection fraction was 40-45% and he had an excellent exercise tolerance. [T. 242-57]. A subsequent echocardiogram on August 8, 2006 indicated a normal ejection fraction. [T. 231-38]. An evaluation in May 2007 showed a mildly thickened

aortic valve without aortic stenosis or insufficiency. All other findings were within the mild or normal range. [T. 550-53].

Plaintiff has been diagnosed with mild asthma or exercise-induced asthma. A spirometry exam obtained in November 2005 was in the normal range, per Jim Lee, PA-C. [T. 348]. A more recent spirometry examination obtained in July of 2009 was suggestive of small peripheral airways obstruction.

In April 2008, Plaintiff presented to Blue Ridge Bone and Joint Clinic complaining of a two week history of severe pain in the left knee. An MRI revealed patella edema with some degenerative changes and patellar cyst consistent with patellofemoral degenerative changes. In July 2008, Plaintiff underwent arthroscopic knee surgery with chondroplasty. He was diagnosed with chondromalacia and rheumatoid arthritis in the left knee. [T. 474-76, 489-90, 493-96].

From March 13 to December 29, 2008, Plaintiff was treated by Dr. Nelson at Laurel Park Medical Centre. [T. 567-77]. On November 11, he was advised to increase his activity, as he was severely deconditioned. [T. 571]. His extremities were rated as "normal" on four of seven visits, and three times his hands were rated as "abnormal." On March 4, 2009, Dr. Nelson provided a disability opinion, limiting Plaintiff to occasional repetitive use of his hands

6

and no repetitive use of his feet. [T. 559-66].

A Psychiatric Review Technique [T. 429-42] and Mental Residual Functional Capacity Assessment (RFC) were performed for Disability Determination Services (DDS) by W.W. Albertson, Ed.D. on October 4, 2006. [T. 425-28]. He found the Plaintiff capable of simple, routine, repetitive tasks in a low stress and non-production atmosphere. This was affirmed by Gloria J. Edmunds, Ph.D. on March 12, 2007. [T. 458].

Antoinette Wall, M.D., performed a consultative physical examination of Plaintiff on November 7, 2006. At that time, Plainitff had no subcutaneous lumps and did not need help with self-care. He could sit and drive for one hour, and could stand for 25-30 minutes. His skin showed significant stretch marks and scarring from weight gains and loss on Prednisone. His strength was intact, his range of motion was normal, and he could pinch, grasp and manipulate small and large objects. X-rays revealed only mild degenerative changes in his spine. [T. 444-48].

Consultative examiner Joel Dascal, M.D. performed a physical RFC assessment of Plaintiff on November 20, 2006. Dr. Dascal found Plaintiff to be capable of medium exertion. [T. 449-56]. This was affirmed by Bertron Haywood, M.D. on March 7, 2007 [T. 457].

At the ALJ hearing, Plaintiff testified that he has muscle and nerve pain

7

all over, a great deal of fatigue, and shortness of breath. He testified that he can walk short distances, but that pain in his back and legs and shortness of breath limit his ability to walk to no more than ten minutes. [T. 33-34]. He reported that pain limited his ability to sit to no more than ten or fifteen minutes. Plaintiff testified that he has balance problems, and that he becomes dizzy going from sitting to standing. [T. 35-36]. Plaintiff testified that cramping limited his fine motor skills. [T. 38]. He stated that he can lift only about eight pounds with one hand without pain, and that he cannot shave or perform overhead tasks without pain. [T. 39]. He stated that he cannot read due to shoulder pain from lifting the book. [T. 40].

Plaintiff stated that pain in his shoulders, back and legs limit his sleep. Additionally, he testified that he has obstructive sleep apnea and central sleep apnea, for which he was recently prescribed a BiPap machine. [T. 36]. He reported taking medication for panic attacks related to sleep, and he stated that he sleeps on average three or four hours a night. [T. 40-41].

At a supplemental hearing, Dr. Theron Blickenstaff testified as a non-examining medical expert. After reviewing Plaintiff's medical records, Dr. Blickenstaff opined that Plaintiff was able to lift 35 pounds occasionally and 15 pounds frequently and was therefore limited to somewhere between light and medium work. [T. 20]. Dr. Blickenstaff stated that he did not concur with

8

Dr. Nelson's opinion that Plaintiff could not use his feet for repetitive movements, because there was no objective evidence to support such a finding. [T. 21-22]. Dr. Blickenstaff further testified that there was no convincing evidence of cardiomyopathy in the record, as Plaintiff's slightly reduced ejection fraction improved with exercise. [T. 24]. He further opined that Plaintiff's concentration likely would be impaired by pain medication, but that his Prednisone dosage was too low to cause severe side effects. [T. 25].

**V.     THE ALJ'S DECISION**

On June 22, 2009, the ALJ issued a decision denying the Plaintiff's claim. [T. 9-15]. Proceeding to the sequential evaluation, the ALJ found that the Plaintiff's date last insured was December 31, 2011 and that he had not engaged in any substantial gainful activity since November 1, 2005. [T. 11]. The ALJ then determined that Plaintiff has the following severe impairments: polymyositis, degenerative disc disease, orthopedic problems in the left knee, mild asthma, history of cardiomyopathy and obesity. [Id.]. He found Plaintiff's history of sleep apnea, renal stones, depression and anxiety to be non-severe. [Id.]. The ALJ concluded that Plaintiff's impairments did not meet or equal a listing. [T. 12]. He then determined that Plaintiff retained the residual functional capacity to perform a range of medium work, modified to 35 pounds

9

occasional and 10 pounds frequent lifting. [Id.]. He found that Plaintiff was a younger individual with a high school education, that he was unable to perform his past relevant work, and that the transferability of job skills was not material. [Id.].

At step five, the ALJ noted that his RFC assessment would not allow Plaintiff to perform the full range of medium work, since the full range of medium work requires a claimant to lift and carry fifty pounds occasionally and twenty-five pounds frequently, but that Plaintiff could perform the full range of light work. [Id.]. Applying the Medical-Vocational Guidelines, the ALJ concluded that significant work existed in the national economy that Plaintiff could perform. Accordingly, he concluded that the Plaintiff was not disabled from November 1, 2005 through the date of his decision. [T. 15].

## VI. DISCUSSION

Plaintiff argues that the ALJ erred in assessing the medical source opinions of record; in assessing Plaintiff's testimony regarding disabling pain; and in relying upon the Medical-Vocational Guidelines in determining that there was other work that Plaintiff could perform.

**A. The ALJ followed applicable law in weighing the medical evidence, and his findings were supported by substantial evidence.**

Plaintiff asserts that the ALJ should have granted controlling weight to the opinion of his treating physician, Dr. Nelson, and that he erred in relying

10

on Dr. Blickenstaff's opinion.

When evaluating the medical opinion of a treating physician, the ALJ must determine whether that opinion should be given controlling weight. 20 C.F.R. § 404.1527(d). In order to be granted controlling weight, the opinion must be from a treating source; it must be a medical opinion concerning the nature and severity of the claimant's impairment; and it must be well-supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R.§ 404.1527(d); Social Security Ruling ("SSR") 96-2p. If an opinion is not entitled to controlling weight, the ALJ must apply the following factors in determining the weight to be afforded to the opinion: 1) the examining relationship; 2) the length, nature, and extent of the treatment relationship; 3) the extent to which the evidence supports the opinion; 4) the opinion's consistency with the record as a whole; 5) the specialty of the medical source; and, 6) other relevant factors. 20 C.F.R. § 404.1527(d)(1)-(6).

In the present case, the ALJ properly discounted Dr. Nelson's opinion. While Dr. Nelson opined that Plaintiff cannot use his feet for repetitive movement, this impairment is supported by only two notations in Dr. Nelson's own records, and those two notations are contradicted by several notations of "normal" extremities elsewhere in her notes. No suggestion of such severe foot impairments are found in Plaintiff's other physicians' notes. The

inconsistency of Dr. Nelson's opinion with the longitudinal medical record is substantial support for the ALJ's decision to afford little weight to Dr. Nelson's opinion.

Plaintiff further argues that the ALJ erred in relying upon the opinions of Dr. Blickenstaff. First, Plaintiff argues that Dr. Blickenstaff's opinions fail to take into consideration Plaintiff's testimony about the disabling effects of his pain. Dr. Blickenstaff testified, however, that he had reviewed all the evidence in the medical record. [T. 23]. The medical records contain evidence of Plaintiff's subjective complaints, so Dr. Blickenstaff was not without information as to Plaintiff's assertions of pain and symptoms in forming his opinions. This argument must be rejected.

Plaintiff next argues that the ALJ erred in relying upon Dr. Blickenstaff's opinions because Dr. Blickenstaff based his opinions solely upon how Plaintiff's polymyositis impacted his ability to work, while ignoring his other impairments, including his cardiomyopathy, dermatomyositis, sleep apnea, and anxiety. This argument, too, is without merit. At the hearing, Dr. Blickenstaff discussed Plaintiff's cardiomyopathy, anxiety, and sleep apnea, and explained why those impairments did not result in any physical limitations. [T. 23-24]. Specifically, Dr. Blickenstaff noted that there was no significant evidence of Plaintiff suffering from cardiomyopathy; that Plaintiff had never

12

received significant treatment for mental health issues; and that Plaintiff's sleep apnea was a treatable condition that, even if left untreated, would result only in mental limitations. [Id.]. Dr. Blickenstaff, therefore, properly considered all of Plaintiff's claimed impairments in rendering his opinions.

Next, Plaintiff argues that Dr. Blickenstaff's analysis of the evidence regarding his polymyositis was flawed. Specifically, Plaintiff claims that the objective medical evidence of record established that this condition resulted in greater work-related limitations than those recognized by Dr. Blickenstaff. There is substantial evidence in the record, however, to support Dr. Blickenstaff's opinions regarding Plaintiff's limitations. Both Dr. Dascal and Dr. Haywood, the DDS physicians, considered the objective medical findings of record, including the diagnoses of polymyositis and dermatomyositis, the flare-up of nodules, the weakness in the upper and lower extremities, and 4/5 strength[1] noted throughout the body, and opined that Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds occasionally; stand, walk, and sit each for six hours in an eight hour workday; push and pull on an unlimited basis; frequently balance, kneel, stoop, crouch, and crawl; and occasionally climb. [T. 450-51, 456-57]. These opinions are consistent with a range of medium work, see 20 C.F.R. § 404.1567(c), and, thus, consistent

---

[1] Strength rated as 4 on a five point scale.

with Dr. Blickenstaff's opinion that Plaintiff could perform between light and medium work.

For these reasons, the Court concludes that the ALJ did not err in his evaluation of the medical opinion evidence of record.

**B.   The ALJ's assessment of pain and symptoms at step four followed applicable law and was supported by substantial evidence.**

The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) . . .which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir.1996). If there is such evidence, then the ALJ must then evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects his ability to work." Id. at 595. Specific factors to be considered include a claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; and other treatment and measures taken for relief of pain or other symptoms. 20 C.F.R. § 416.929(c)(3)(i-vi).

Having found that Plaintiff has severe impairments that reasonably could be expected to cause pain and the other symptoms alleged, the ALJ noted

Plaintiff's testimony regarding muscle pain, fatigue, and shortness of breath, and how these symptoms limit his daily activities. [T. 13]. The ALJ found, however, that Plaintiff's subjective complaints of disabling pain were not supported by the objective medical evidence of record. There is substantial evidence to support the ALJ's finding in this regard. Plaintiff repeatedly was found to be capable of performing a range of light to medium work. [T. 19-20; 215-17; 450-51, 457]. Moreover, the record is replete with findings that Plaintiff had normal strength, normal muscle tone, and full range of motion in all extremities. In addition, Plaintiff's subjective complaints of disabling pain were contradicted by his own statements to medical providers. For example, Plaintiff reported that medications allowed him to manipulate objects [T. 135]; that although shoulder pain limited the amount of weight he could lift with his upper body muscles, he nonetheless worked out in a gym [T. 355]; that on a good day, he could do some work around his house [T. 444]; and that he was presently able to do all of his own activities of daily living [Id.]. Based on this evidence, the Court concludes that the ALJ did not err in his assessment of Plaintiff's credibility.

**C.    The ALJ's step five assessment followed applicable law and is supported by substantial evidence.**

At step five, the burden of proof falls upon the Commissioner to show the existence of jobs that a person with claimant's functional and vocational

15

capacity could perform. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975). In meeting this burden, the Commissioner can rely upon the Medical-Vocational Guidelines, or "Grids." 20 C.F.R. Pt. 404, Subpt. P, App'x 2; SSR 85-15; SSR 83-14. The Grids "take administrative notice of the availability of job types in the national economy for persons having certain characteristics, namely age, education, previous work experience, and residual functional capacity." Grant v. Schweiker, 699 F.2d 189, 191-192 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 265 (4th Cir. 1981). Based on those factors, the Grids indicate whether the claimant can perform other work that exists in significant numbers in the national economy. See Murray v. Shalala, No. 94-2039, 1995 WL 139334, at *5 (4th Cir. Mar. 31, 1995). Use of the Grids, however, satisfies the Commissioner's burden "only where the claimant suffers solely from exertional impairments." Grant, 699 F.2d at 192. Where "non-exertional impairments further limit the range of jobs available to the claimant, the [G]rids may not be relied upon to demonstrate the availability of alternative work activities." Id. In such instances, the Commissioner instead must "produce a vocational expert . . . to testify that the particular claimant retains the ability to perform specific jobs which exist in the national economy." Id.

Plaintiff argues that his disabling pain constitutes a significant

16

non-exertional limitation that prevented the ALJ from relying upon the Grids at step five of the sequential evaluation process. Plaintiff argues that the significance of his non-exertional pain limitation was confirmed by the testimony of the VE who stated that, if Plaintiff's subjective complaints of pain were accepted as true, he would not be able to perform any type of work. [T. 44]. Here, however, the ALJ excluded any limitations from his RFC assessment reflecting Plaintiff's subjective complaints of disabling pain because the ALJ found that those complaints were not fully credible. This finding was proper for the reasons discussed above. Thus, the limitation of disabling pain as alleged by Plaintiff did not preclude the ALJ's reliance upon the Grids. Accordingly, the ALJ properly found that Plaintiff could perform other work that existed in significant numbers in the national economy.

## VII.  CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standards, and that there is substantial evidence to support the ALJ's finding of no disability through the date of his decision.

**O R D E R**

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 12] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 8] is **DENIED**.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: November 28, 2011

Martin Reidinger
United States District Judge